IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. BOBBY NIXON, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 07 C 1286 |
| STEVE WRIGHT, | ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Bobby Nixon's ("Nixon") motion for reconsideration and request in the alternative for a certificate of appealability. For the reasons stated below, we deny the motion for reconsideration and deny the request for a certificate of appealability.

**BACKGROUND**

On March 25, 1998, a shooting occurred in Chicago Illinois ("Shooting"). According to eyewitnesses, a group of men drove by a corner in a car ("Car") and began shooting. The men then exited the Car, fired some more shots, re-entered the Car and fled. Nixon was arrested for alleged participation in the shooting and was

1

tried in a bench trial in the Circuit Court of Cook County, Illinois. At trial, the court was presented with the grand jury testimony of Tarrill Peters ("Peters") and Salatheo Moss ("Moss"), who testified before the grand jury that Nixon was the shooter at the Shooting. Although Peters and Moss recanted their grand jury testimony, contending that Nixon was not the shooter, the trial court admitted into evidence their prior grand jury testimony. In addition, Reginald Duncan ("Duncan") testified at trial that Nixon was the shooter at the Shooting. Nixon was found guilty of first-degree murder, attempted murder, and aggravated battery and was subsequently sentenced to concurrent prison terms of fifty years for the murder, fifteen years for the attempted murder, and fifteen years for the aggravated battery. On June 25, 2002, Nixon's conviction and sentence were affirmed by the Illinois Appellate Court. Nixon's petition for leave to appeal to the Illinois Supreme Court was denied on October 2, 2002, and he failed to file a petition for writ of certiorari in the United States Supreme Court. Subsequently, Nixon filed a post-conviction petition in the Circuit Court of Cook County on November 27, 2002, which was dismissed. Nixon then moved for reconsideration, and the trial court rescinded its order of dismissal. The State filed a motion to dismiss Nixon's post-conviction petition, which was granted. Nixon also filed a state petition for post-judgment relief on the ground that Duncan's testimony was perjured, which was denied as untimely. Nixon appealed the dismissal of his post-conviction petition and post-judgment relief petition to the Illinois Appellate Court, which affirmed the dismissals on February 21, 2006. On May 24, 2006, the Illinois Supreme Court denied Nixon's petition for leave to

appeal. Nixon filed the instant petition for a writ of *habeas corpus* ("Petition") on March 7, 2007, which we denied on August 22, 2007. Nixon now requests that the court reconsider the August 22, 2007, ruling and requests in the alternative a certificate of appealability.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") permits parties to file, within ten days of the entry of a judgment, a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e). Rule 59(e) motions do not give a party the opportunity to rehash old arguments or to present new arguments or evidence "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)(citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). Rather, for a Rule 59(e) motion, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" in order to be successful. *LB Credit Corp.*, 49 F.3d at 1267 (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). The decision of whether to grant or deny a motion brought pursuant to Rule 59(e) "is entrusted to the sound judgment of the district court. . . ." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

If a court denies a Section 2255 motion and the petitioner wishes to appeal that ruling, the petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c). A court should only issue a certificate of appealability "if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must also show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDonnell*, 529 U.S. 473, 484 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

## DISCUSSION

I. Testimony of Six Eyewitnesses

Nixon argues that the court erred in concluding that he had not shown ineffective assistance of counsel at trial due to the fact that his trial counsel failed to secure the testimony of six eyewitnesses that saw the Shooting and who told police that Nixon was not the shooter. Nixon contends that three of the eyewitnesses either worked or lived on the exact corner where the Shooting occurred and yet Nixon's counsel did not make sufficient effort to contact the eyewitnesses. In addition, Nixon argues that Jose Reyes ("Reyes") who lived across the street from the shooting and was one of the eyewitnesses, made a statement to the police describing the offenders and Car, and indicating that Nixon was not one of the men in the Car. Nixon claims that, although Reyes provided the police with his address and phone number, Nixon's trial counsel did not make sufficient effort to contact him. Nixon also contends that his trial counsel was not diligent in locating Mario Rayyes ("Rayyes"), another eyewitness, who not only indicated that Nixon was not involved in the

4

shooting, but also named who he believed to be the shooter.

As we stated in our prior ruling, the decision concerning which witnesses to call at trial is a strategic one that is committed to the professional discretion of a defendant's attorney. *See United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002)(stating that a "defense attorney is not obligated to track down each and every possible witness or to personally investigate every conceivable lead"); *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)(stating that "[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review" and that "'[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him'")(quoting in part *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990)).

In regards to Rayyes, who named another shooter, the record indicates that Nixon's trial counsel made extensive efforts and employed several resources to locate Rayyes and secure his testimony. Nixon argues in the instant motion that the court misunderstood his argument in denying his Petition. Nixon contends that although his counsel made efforts to locate Rayyes before the trial, during the trial his counsel learned that Rayyes was in Washington, D.C. Nixon contends that a third party told Nixon's counsel that Rayyes was in Washington, D.C., but that he would not consent to come to Illinois to testify. Nixon contends that his trial counsel should not have accepted the word of the third party and instead should have asked for a recess and should have attempted to contact Rayyes to verify whether he was willing to come to Illinois. We do not agree that Nixon has shown that his trial

counsel was ineffective in not seeking a recess of the trial to further search for Rayyes. Nixon's counsel made significant efforts prior to trial and could have had a variety of reasons for his actions, including that he may have reasonably concluded that the trial was proceeding in a favorable manner and that interrupting the trial to engage in a further search, which would have delayed the trial and could have proved fruitless, was not to the advantage of his client.

In regards to the other five eyewitnesses referenced in the Petition, Nixon argues that the witnesses could have been located through due diligence. However, the Illinois state courts reviewing Nixon's appeals and post-conviction petition concluded that there was insufficient evidence to show that Nixon's trial counsel was ineffective based upon his efforts to locate witnesses to the shooting. (Ex. G 24); (Ex. K 5); (Ex. Q 23). For example, the state court initially addressing Nixon's post-conviction petition properly concluded that there was insufficient evidence that indicated that the testimony of the six eyewitnesses would have altered the result in Nixon's trial. (Ex. K 5-6). Also, the Illinois Appellate court reviewing Nixon's post-conviction petition noted that the record indicated that Nixon had not provided his counsel with information to assist his counsel in locating exonerating witnesses. (Ex. Q 23). Nixon has not shown in his Petition or in his instant motion that the level of effort made by his trial counsel to locate the six eyewitness was such that his counsel failed to provide effective assistance of counsel. Also, in regards to the eyewitnesses referenced in the Petition, in light of the other evidence presented at the trial, Nixon has not shown that his case was prejudiced by the level of effort put forth

6

by his counsel to locate the witnesses. *See Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007)(stating that for an ineffective assistance of counsel claim a petitioner must show that "the deficient performance prejudiced the defense"). Thus, in regard to the efforts to procure the testimony of the six eyewitnesses, Nixon offers no new evidence or arguments and merely indicates his disagreement with the court's conclusion that the efforts of his counsel were sufficient under the law. Nixon has not shown that the court erred in concluding that Nixon had not shown ineffective assistance of counsel at trial. In addition, on this point Nixon has not made a substantial showing of the denial of a constitutional right and he has not shown that the arguments deserve further encouragement on appeal. Nor has Nixon pointed to sufficient facts or evidence that would warrant an evidentiary hearing concerning the six eyewitnesses. *See* 28 U.S.C. § 2254(e)(2)(explaining when a court must hold an evidentiary hearing such as if there are sufficient facts that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"); *see also Spreitzer v. Peters*, 114 F.3d 1435, 1454 (7th Cir. 1997)(stating that the state courts need not have given a "full-fledged evidentiary hearing" in order to give a full and fair hearing to the petitioner); *Mendiola v. Schomig*, 224 F.3d 589, 592-93 (7th Cir. 2000)(stating that "if the state court's finding is supported by the record, even though not by a hearing on the merits of [the] factual issue, then it is presumed to be correct")(quotations omitted). Nixon attempted to develop this factual record in the state courts and he was accorded a full and fair hearing on the eyewitness issues by the state courts. The record also

7

supports the state courts' factual and legal findings. Thus, Nixon has not shown that he is entitled to a certificate of appealability or reconsideration based upon the eyewitness issues raised in his Petition.

II. Duncan's Testimony

Nixon also argues that we erred in concluding that he had not shown that his due process rights were violated. Nixon argues that Duncan admits that he lied at trial when he identified Nixon as the shooter, in order to obtain a lesser sentence for himself in another criminal matter. Nixon also contends that the State failed to notify his counsel in advance that Duncan was going to testify that he was present at the Shooting or that Duncan would identify Nixon as the shooter.

A. Recantation of Testimony

Nixon contends that he has a video-recorded statement of Duncan made in 2000 ("Video Statement") in which Duncan states that his testimony against Nixon at trial was false and that he did not witness the Shooting. Nixon contends that Duncan further states on the video that he agreed to implicate Nixon in the shooting because the prosecutor promised Duncan leniency in another criminal matter if Duncan identified Nixon as the shooter.

8

1. Effect of Recantation on Outcome of Trial

Nixon argues that the trial court relied upon the testimony of Duncan in finding that Nixon was guilty and that, in light of the Video Statement, Nixon could not have been found guilty. However, as the state appellate courts in both direct appeal and in post-conviction proceedings pointed out, the trial court did not rely solely on Duncan's testimony. (Ex. Q 13-15); (Ex. G 15-16). The trial court relied upon the grand jury testimony of Peters and Moss, which the court found more persuasive than the subsequent recantations of their grand jury testimony. (Ex. Q 13-15); (Ex. G 15-16). The state appellate court also pointed out that in the Video Statement Duncan merely attempts to retract his testimony and does not offer in the alternative any evidence or facts that would exonerate Nixon and raise any issue as to Nixon's actual innocence. (Ex. Q 15). Thus, the Video Statement is not sufficient evidence to make a substantial showing of the denial of Nixon's constitutional rights. Nixon has not shown that a reconsideration of the court's ruling is warranted.

2. Disclosure of Leniency Deal

Nixon contends that Duncan identified Nixon as the shooter at trial because of a deal he had with the prosecutor in another case who allegedly promised Duncan leniency in that matter. Nixon contends that the State failed to properly disclose this deal prior to Duncan's testimony. Nixon claims that the record contains handwritten notes of the prosecutor in Nixon's criminal case revealing that Duncan had told him

9

to contact the prosecutor in Duncan's criminal case to "discuss the arrangement." (Pet. Mem. 43). However, the notes are not sufficient evidence to show any impropriety. As the state court pointed out, Duncan testified at trial that he was not promised a deal in exchange for his testimony in Nixon's case. (Ex. K 7). Nixon has not pointed to sufficient evidence that shows that Duncan testified as part of a deal for a lesser sentence in another case or that the prosecutor in Nixon's case knowingly offered perjured testimony. Thus, Nixon has not shown that a reconsideration of the court's ruling is warranted in regard to the leniency deal issue.

### B. Eyewitness Testimony

Nixon argues that the State purposefully deceived his counsel by failing to notify his counsel that Duncan would testify at trial that he was an eyewitness to the Shooting and would identify Nixon as the shooter. Nixon contends that prior to trial his counsel was provided only with a written statement by Duncan that indicated that he would testify that he saw Nixon the day before the Shooting. According to Nixon, however, at his trial when the prosecutor questioned Duncan, the prosecutor inexplicably directed Duncan to the day of the Shooting and Duncan testified that he was at the Shooting and he identified Nixon as the shooter. Nixon argues that his constitutional rights were violated because the "due process clause will not tolerate calculated trickery on the part of the prosecution that is designed to interfere with a defendant's ability to defend against the charges." (Recon. 10).

As the state court pointed out, Nixon's counsel was given an opportunity to

cross-examine Duncan at trial. (Ex. K 7). The state court also pointed out that in regard to the conduct of the prosecutor, the record indicates that the State did disclose Duncan's name as a witness. (Ex. K 7). Also the record does not indicate that the State failed to disclose any written statements in the possession of the State made by Duncan concerning his eyewitness account of the Shooting. (Ex. G. 19-21). In addition, as is indicated above, Duncan was not the only eyewitness that identified Nixon as the shooter. Nixon has not presented sufficient evidence to show any impropriety by the prosecutor or that Nixon was prejudiced by the timing of Duncan's identification of Nixon as the shooter. Nixon has failed to show that a reconsideration of the court's ruling is warranted in regard to this issue.

### C. Failure to Seek Continuance

Nixon also argues that he received ineffective assistance of counsel at trial because when his counsel indicated during trial that he was not aware that Duncan was going to identify Nixon as the shooter, the court asked Nixon's counsel if he needed a continuance to investigate the new development in the case. Nixon points to the transcript of the trial, which shows that his counsel stated that if he had known about the testimony he would have taken a statement from Duncan or sent out an investigator, but his counsel then declined to seek a continuance. Nixon argues that his counsel's decision not to ask for a continuance was unreasonable. We disagree. Nixon's trial counsel could have had a variety of reasons for not seeking a

11

continuance, including that he may reasonably have concluded that Duncan's testimony was unreliable and that further investigation concerning Duncan would not have been warranted. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984)(stating that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"). Therefore, Nixon has not shown that this court erred in regard to Duncan's testimony. Thus, as to the issues surrounding Duncan's testimony, Nixon has not made a substantial showing of the denial of a constitutional right and he has not shown that the arguments deserve further encouragement on appeal. Nor has Nixon pointed to sufficient facts or evidence to warrant an evidentiary hearing into any matter relating to Duncan's testimony. *See* 28 U.S.C. § 2254(e)(2)(explaining when a court must hold an evidentiary hearing such as if there are sufficient facts that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"); *Spreitzer*, 114 F.3d at 1454; *Mendiola*, 224 F.3d at 592-93. Nixon attempted to develop the factual record in the state courts regarding Duncan's testimony and Nixon was accorded a full and fair hearing on the issues concerning Duncan's testimony by the state courts. The record also supports the state courts' factual and legal findings.

In summation, Nixon has not provided sufficient justification for the reconsideration of the denial of the Petition. Nor has Nixon shown, based on the

arguments presented in his Petition, accompanying memorandum, or in the instant motion and his reply brief, a substantial showing of the denial of a constitutional right. Therefore, based upon the above, we deny the motion for reconsideration and deny the request for a certificate of appealability.

## CONCLUSION

Based on the foregoing analysis, we deny the motion for reconsideration and deny the request for a certificate of appealabiltiy.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 26, 2008